HOLMES v. COALSON. (No. 8108.)

(Court of Civil Appeals of Texas. Ft. Worth. May 22, 1915. On Motion for Rehearing, July 3, 1915.)

1. MOTIONS 42—RENEWAL OF MOTION— RES JUDICATA.

While the doctrine of res judicata is not strictly applicable to motions and interlocutory orders, and while the court has a discretionary power to allow a renewal of such a motion, that discretion, in the absence of special circumstances constituting an equitable showing for another hearing, will not be exercised after the motion has been determined upon its merits.

[Ed. Note.—For other cases, see Motions, Cent. Dig. §§ 53, 54; Dec. Dig. 42.]

---

2. APPEAL AND ERROR ☞544—RESERVATION OF GROUNDS OF REVIEW—BILL OF EXCEPTIONS—"RECORD PROPER."

Vernon's Sayles' Ann. Civ. St. 1914, art. 2062, provides that where a ruling appears of record, no bill of exception shall be necessary. Article 1827 requires the petition to set forth the residences of the parties. Article 1830 provides that, with certain exceptions, no person shall be sued out of the county of his domicile. Article 1903 requires a plea of privilege to be in writing and verified. Articles 1832 and 1833 provide that when such a plea is sustained the suit shall not be dismissed, but shall be transferred to the county of defendant's residence. Rule 53 (142 S. W. xxi), for district courts provides that no bills of exception shall be taken to matters which at common law constitute the "record proper," and rule 55 provides that rulings on applications for change of venue and on other proceedings not embraced in the preceding rules must be presented in a bill of exceptions. Held, that no bill of exceptions is necessary to secure a review of a judgment overruling a plea of privilege, especially as the rules mentioned were in existence long prior to the enactment of articles 1832 and 1833, under which such a plea is claimed to be equivalent to an application for a change of venue (citing Words and Phrases, Record).

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2412–2415, 2417–2420, 2422–2426, 2428, 2478, 2479; Dec. Dig. ☞544.]

3. VENUE ☞32—OBJECTIONS TO VENUE—RAISING BY EXCEPTION TO PETITION.

The privilege to be sued in the county of one's residence may be invoked by a special exception to the petition where the facts alleged in the petition show the right to claim such privilege.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 47–50; Dec. Dig. ☞32.]

4. APPEAL AND ERROR ☞870—REVIEW—INTERLOCUTORY ORDERS.

Where an appeal does not lie from an interlocutory order, a party may complain thereof on appeal from the final judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3451, 3487–3489, 3491–3512; Dec. Dig. ☞870.]

5. JURY ☞16—RIGHT TO JURY—PLEA OF PRIVILEGE.

A party has a right to a jury trial upon a plea of privilege.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 84–94; Dec. Dig. ☞16.]

6. VENUE ☞72—PLEA OF PRIVILEGE—TRIAL.

A plea of privilege may be heard and determined in connection with a trial of the case upon its merits.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 127; Dec. Dig. ☞72.]

7. APPEAL AND ERROR ☞556—RECORD—NECESSITY OF STATEMENT OF FACTS.

A bill of exceptions cannot supply the office of a statement of facts, however full its recital of the facts.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☞556.]

8. EXCEPTIONS, BILL OF ☞1 — OFFICE OF BILL.

The office of a bill of exceptions is to make that a part of the record which otherwise would not be.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 1; Dec. Dig. ☞1.

For other definitions, see Words and Phrases, First and Second Series, Bill of Exceptions.]

9. COURTS ☞85—RULES OF COURT—LIBERAL CONSTRUCTION.

Rules of practice are more liberally construed than statutes.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 294, 296–301; Dec. Dig. ☞85.]

10. VENUE ☞33—CHANGE—AUTHORITY TO MAKE.

A court has no authority to change the venue, except when expressly given by law.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 51, 53; Dec. Dig. ☞33.]

11. VENUE ☞72—PLEA OF PRIVILEGE—BURDEN OF PROOF.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, providing that no inhabitant of the state shall be sued out of the county of his domicile, except in the cases therein specified, and subdivision 7, providing that in cases of fraud suit may be instituted in the county in which the fraud was committed, a plaintiff, suing for fraud in a county other than that of defendant's residence, on the ground that the fraud was committed there, had the burden of proof, and was bound to overcome a plea of privilege by proof that the fraud was not only committed, but that it was committed in that county.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 127; Dec. Dig. ☞72.]

12. FRAUD ☞12—STATEMENTS CONSTITUTING ACTIONABLE FRAUD.

In negotiations for an exchange of land defendant's agent wrote plaintiff that: "Our party * * * will trade, making you the following guaranty for twelve months * * * twelve houses at $2 per week, $24; twelve houses at $1.50 per week," etc. Held, that this guaranty was contractual only, and did not amount to a representation that the houses were then renting for the sums specified, and would not furnish a basis for the recovery of damages upon the theory of fraud and deceit.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 14; Dec. Dig. ☞12.]

13. FRAUD ☞9—ACTIONS—PETITION—SUFFICIENCY.

In an action for fraud on an exchange of property, an allegation that defendant represented to plaintiff that his property was good income property, and that plaintiff was thereby induced to believe that the property was then bringing an aggregate rental of $50 a week, did not show fraud sufficient to support a recovery.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 8; Dec. Dig. ☞9.]

14. APPEAL AND ERROR ☞719 — ASSIGNMENTS OF ERROR—NECESSITY.

Where, on a plea of privilege in an action for fraud in connection with an exchange of land, the court found that plaintiff was induced to make the trade by a letter from defendant's agents containing a guaranty that the rents for 12 months would equal specified amounts, and further found that such guaranty amounted to a representation that the property was then being rented for those amounts, its action in sustaining the plea of privilege solely on such guaranty was fundamental error, and defendant was not required to specifically assign error, as the court's conclusion that the guaranty amounted to a representation was a conclusion of law upon the terms of the letter, construed as the court would construe any written contract.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig. ☞719.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

On Motion for Rehearing.

**15. APPEAL AND ERROR ☞644—STATEMENT OF FACTS—WAIVER OF OBJECTIONS.**

Rule 8 (142 S. W. xi); for Courts of Civil Appeals provides that all motions relating to informalities in the manner of bringing a case into court shall be filed within 30 days after the filing of the transcript. Though a transcript was filed several months before a cause was submitted, appellee made no motion to strike out the statement of facts, and made no objection in his brief to the consideration thereof, except to contend that there was "no official statement of facts." In his reply to certain of the assignments, he referred to the statement of facts in support of his contentions. *Held,* that the statement of facts would be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2795–2798; Dec. Dig. ☞ 644.]

**16. APPEAL AND ERROR ☞768—BRIEFS—ADMISSIONS.**

An assignment of error, on appeal from an order overruling a plea of privilege, which appeal was dismissed, recited that the petition was admitted as true for the purposes of the plea. On appeal from the final judgment for plaintiff, it was stated in the statement under certain assignments that, for the purpose of the submission of the plea, it was admitted that the allegations of the petition were true as on general demurrer. The statement of facts showed that no such admission was made on the hearing of the plea, and such admission would have been in direct opposition to several assignments of error addressed to the order overruling the plea. *Held* that, while the language employed by appellant's counsel was inapt, it did not amount to an admission that the allegations of venue in the petition were true.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3103; Dec. Dig. ☞768.]

**17. APPEAL AND ERROR ☞931—PRESUMPTIONS IN SUPPORT OF JUDGMENT.**

In an action for fraud brought in a county other than that of defendant's residence, on the ground that the fraud was committed there, the court on a plea of privilege erroneously found that a guaranty by defendant on an exchange of lands of the amount of the rent of his property for 12 months amounted to a representation that the property was then rented for the amount specified. There was no evidence that plaintiff was induced by such guaranty to believe that the property was rented for the prices specified. *Held* that, in the absence of such evidence, it could not be presumed in support of the judgment that the court found that plaintiff was induced to so believe; and hence the findings did not support the judgment, even though a finding was presumed that the letter containing the guaranty was written with the intention of inducing plaintiff to so believe.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3728, 3762–3771; Dec. Dig. ☞931.]

**18. APPEAL AND ERROR ☞1175—DISPOSITION OF CAUSE—RENDERING JUDGMENT WHICH SHOULD HAVE BEEN RENDERED.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 1626, provides that when a judgment shall be reversed the court shall proceed to render such judgment as the court below should have rendered, except when it is necessary that some facts be ascertained. *Held,* that where the evidence on a plea of privilege was insufficient as a matter of law to support the order overruling the plea, the plea will be sustained and the case ordered transferred to the proper

county, instead of remanding the case for another trial on the plea of privilege.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. ☞1175.]

Appeal from District Court, Parker County; F. O. McKinsey, Judge.

Action by J. B. Coalson against J. V. W. Holmes and others. From a judgment for plaintiff, the defendant named appeals. Reversed and remanded, with instructions.

See, also, 154 S. W. 661.

Beall & Spencer, of Sweetwater, for appellant. R. L. Stennis, of Dallas, J. C. Wilson, of Ft. Worth, and E. H. Grindstaff, of Austin, for appellee.

DUNKLIN, J. J. B. Coalson, as plaintiff, recovered a judgment against J. V. W. Holmes, for damages for alleged fraud practiced by the defendant upon the plaintiff in a certain trade between the parties, in which Coalson conveyed to Holmes a league of land in Taylor county in exchange for four lots of land in the city of Ft. Worth upon which were situated 32 rent houses. From that judgment Holmes has appealed.

H. H. Allen and W. Y. Rockwell, composing the partnership of Allen & Rockwell, real estate brokers, who negotiated the trade for Holmes, were also made parties defendant in the suit, but a judgment was rendered in their favor, and of that judgment no complaint is made by Coalson.

The suit was instituted in Parker county where Coalson resided. In plaintiff's petition it was alleged that all of the defendants resided in Nolan county. In the original petition, filed September 6, 1911, for venue purposes it was alleged that:

"On, to wit, the —— day of October, 1910, he [plaintiff] received information from the defendants Allen & Rockwell that the defendant Holmes owned certain improved property in the city of Ft. Worth and that said Holmes would exchange said city property for ranch lands, and the said Allen & Rockwell represented themselves to be the agents of said Holmes for the sale or exchange of said city property; that on the —— day of October, 1910, plaintiff wrote and addressed a letter to said Allen & Rockwell, asking them for a description of said city property and for information as to the amount for which said city property was then being rented. Said letter was sent to said Allen & Rockwell by regular course of mail, and in due time and by due course of mail plaintiff received from said Rockwell the following letter in reply to plaintiff's said inquiry:

"'Sweetwater, Texas, Nov. 1, 1910.

"'Mr. J. B. Coalson, Garner, Texas—Dear Sir: The following is a more complete description of the Ft. Worth property: 32 3-room rent houses about 2 years old, nicely papered and painted, deep well and windmill, also an electric pump so that water can be pumped when wind is insufficient to run mill, sewerage system, 4 lots each 50 by 140 feet, east of Union Depot. This property fronts on Pacific avenue on opposite side of block from car line.

"'Our party has investigated your land and says will trade making you the following guaranty for 12 months, you and he each to pay 2½

per cent, the usual amount of commission on trades.

| | |
|---|---|
| 12 houses at $2.00 per week | $24 00 |
| 12 houses at $1.50 per week | $18 00 |
| 8 houses at $1.00 per week | $ 8 00 |
| Total per week | $50 00 |

" '52 weeks at $50.00 per week amounts to $2600.00 per year the taxes amount to $145.70 per year, insurance $35.90 per year on $7,040.00, making a total yearly expense of $180.00 leaving $2,419.10 net per annum or 8% net on $30,000.00 per annum.

" 'Kindly advise us by return mail at what time you will be ready to look at this property and we will arrange to show same to you.

" 'Awaiting an early reply, from you, we are,

" 'Yours truly,      Allen & Rockwell.'

"Plaintiff says that by the terms of said letter in reply to the letter of inquiry which he had addressed to said Allen & Rockwell he understood and believed that said city property consisted of the lots therein described, and that the improvement thereon included 32 three-room rent houses about two years old, nicely papered and painted, deep well and windmill, also an electric pump, so that water can be pumped when wind is insufficient to run mill, with sewerage system, and that 12 of said houses were each then rented for $2 per week and that another 12 of said houses were each then rented for $1.50 per week, and that the remaining 8 of said houses were each then rented for $1 per week; that said Holmes guaranteed to plaintiff rents on said houses for a period of 12 months; and plaintiff says that by said letter defendants intended to induce plaintiff to believe that said 32 houses were then renting for said sums per week, aggregating the sum of $50 per week and from said letter, construed by plaintiff in connection with his letter to said Allen & Rockwell, plaintiff was induced to believe and did believe that said houses were renting for said sums per week aggregating said sum of $50 per week, and was induced to believe and did believe that said Holmes thereby guaranteed to plaintiff rents on said houses at said rates per week for a period of 12 months following the conveyance of said property to plaintiff and aggregating the total sum of $2,600.

"Plaintiff says that said letter was addressed to him at Garner, Tex. (R. F. D. No. 1) which is in said county of Parker, and was received by him and read by him in said county of Parker.

"Plaintiff says that in response to an invitation by letter from said Allen & Rockwell received by him in said county of Parker, he went to said city of Ft. Worth on the 15th day of November, 1910, and said property and said houses were then and there pointed out to plaintiff by one E. M. McClelland; that in pointing out said houses to plaintiff the said McClelland then and there represented to plaintiff that 12 of said houses were each then renting for $2 per week, and that another 12 of said houses were each renting for $1.50 per week, and that the other 8 were renting for $1.00 per week; and plaintiff says that in showing him said houses and in making said representations to him the said McClelland was acting as the agent of said defendants.

"Plaintiffs says that at said time he was not acquainted with the market value, nor of the reasonable value of said city property, and relied upon its rental income to determine the value of said city property, and plaintiff then had no information as to the rents that had been received from said property, except the information to him through said letter of November 1, 1910, and the representation made to him by said McClelland on said 15th day of November, 1910, and plaintiff then had no information as to the prices at which said houses were then being rented, and no information as to the rental

value of said various houses, and no information as to whether said houses were occupied, except as conveyed to him by said letter and by said representations by said McClelland, and plaintiff relied wholly and explicitly upon said letter from said Allen & Rockwell and said representations by McClelland for said information, and believed said houses were then rented, and plaintiff was induced by said letter and the representations contained therein to convey to said Holmes plaintiff's said ranch lands in exchange for said city property; and plaintiff says that he understood the representations made by said McClelland as aforesaid as being a confirmation of the information given plaintiff by said letter as to the amount of rents then being received on said property as aforesaid."

Following those allegations were further allegations that the said representations were false; that as a matter of fact 12 of said houses were at that time being rented at $1.50 per week each and 20 at only $1 per week, making a total rental of only $38 per week, $12 per week less in the aggregate than so represented. It was further alleged that plaintiff resided in Parker county 40 miles from the city of Ft. Worth, and did not further see the Ft. Worth property until after the exchange was consummated on May 12, 1911; that the exchange was consummated in the county of Parker; that on the day of such exchange and before the delivery of the deeds—

"said Holmes and said Rockwell, in the county of Parker, reaffirmed said guaranty relative to the amount of said rents."

It was further alleged that the representations in the letter received by him from Allen & Rockwell that the houses were nicely painted and papered, and the representations by McClelland relative to the amount of rents, were false at the time they were made, and also at the time the exchange of property was consummated; that if it had been true that the property was renting at the prices named in the letter, it would have been reasonably worth on the market $26,000. Then follow these further allegations:

"Plaintiff says that on the 16th day of November, 1910, said Holmes represented to plaintiff by letter, addressed and delivered to plaintiff in the same manner as said other letter, that said property was good income property, and thereby induced plaintiff to believe that said property was in fact bringing in the revenue which his said agents had represented to be a fact.

"Plaintiff says that when said exchange of property was consummated on said 12th day of May, 1911, said sewerage connection had been abandoned, and said water system was out of repair and in such damaged condition as to constitute said sewerage connection a nuisance; that said damaged conditions were known to Holmes and his agents, but were concealed from plaintiff, and by reason of said willful concealment plaintiff consummated said trade, believing that the conditions described in said letter still existed.

"Plaintiff says that the market value of said property and its reasonable value on said 15th day of November, 1910, and on said 12th day of May, 1911, did not exceed the sum of $15,000; and plaintiff says that since said 12th day of May, he has had said property and said water system and sewerage system repaired, and has been diligent in his efforts to rent said property, and has not been able to rent any of said

houses for more than $1.50 per week, and has not been able to rent but a few of said houses at any time, and has not been able to realize more than $15 per week as rents on said property, all to plaintiff's damage in the sum of $11,000, for which amount he sues.

"Plaintiff says that in all of said acts and misrepresentations by said Allen & Rockwell the said Allen & Rockwell were acting as agents and in behalf of said Holmes and were acting in collusion with said Holmes to deceive and defraud plaintiff."

To this petition the defendants filed a plea of privilege claiming their right to be sued in Nolan county; alleging that county to be the residence of defendants Holmes and Rockwell, further alleging that the residence of Allen was in Irion county, but Allen conceded the right of plaintiff to maintain the suit in Nolan county. In the plea of privilege it was further alleged that the exchange of property between the plaintiff and Holmes was the consummation of the contract in writing between them dated November 15, 1910; that said contract embodied all the terms of the trade between them. A copy of the contract was attached to the plea, and is as follows:

"The State of Texas, County of Tarrant.

"This memorandum witnesseth that we, J. V. W. Holmes, party of the first part, of the county of Nolan, state of Texas, and J. B. Coalson, party of the second part of the county of Parker, state of Texas, have this day made and entered into the following contract:

"(1) The party of the first part for and in consideration of $26,568.00, well and truly to be paid to him by the party of the second part, as hereinafter stated, hereby agrees and binds himself to convey to the party of the second part lots Nos. 11, 12, 13, and 14 in block No. 89, Texas & Pacific addition to the city of Fort Worth, Tarrant county, Texas.

"(2) The party of the second part hereby agrees and binds himself in consideration of $26,568.00 well and truly to be paid him by the party of the first part to convey unto the party of the first part four thousand, four hundred and twenty-eight acres of land known as league 143, situated in Taylor county, Texas.

"(3) The consideration to be paid to party of the first part shall be the conveyance to said party of the first part of the land described in section 2 of this contract, and the consideration to be paid the party of the second part shall be the lots and improvements thereon described in section 1 of this contract.

"(4) The lands of each of the parties hereto shall be conveyed by warranty deed, free of incumbrance. Each party shall furnish the other, abstract of title to date, and the party shall have a reasonable time in which to have said abstract examined and consummate this trade. J. V. W. Holmes.
"J. B. Coalson.
"Witness E. M. McClelland."

On April 4, 1912, the plea of privilege was heard by the court and sustained, and the case ordered transferred from the district court of Parker county to the district court of Nolan county. The record before us contains a statement of facts showing the evidence introduced upon that hearing of the plea, and the only evidence introduced consisted of the written contract of exchange between Holmes and Coalson attached to defendants' plea of privilege, a copy of the letter from Allen & Rockwell set out in the

plaintiff's original petition, and an agreement between the parties that the domicile of the defendants was as shown by the plea of privilege. On April 27, 1912, the trial judge, on motion of the plaintiff, set aside his order sustaining the plea of privilege and upon a further consideration of such plea overruled it, to which action of the court, as shown by the order, the defendants in open court excepted and gave notice of appeal to the Court of Civil Appeals for the Second Supreme Judicial District. Upon that hearing the same evidence offered upon the original hearing was again introduced. In addition to that evidence it was further agreed that the letter from Allen & Rockwell to Coalson of date November 1, 1910, was written in reply to a letter from Coalson to Allen & Rockwell, making inquiry as to what the Ft. Worth property was renting for. It was further agreed that the contract of exchange was signed by plaintiff at Ft. Worth in Tarrant county, Tex., that it was then forwarded to Holmes at Sweetwater in Nolan county, where he signed it and mailed it to plaintiff Coalson at his home in Parker county inclosing with a letter from Holmes to Coalson reading as follows:

"Sweetwater, Texas, 11/16/1910.

"Mr. J. B. Coalson, Garner, Texas—Dear Sir: I inclose contract signed. Where and to whom do you want the abstract sent to. You may send yours here to me and I will have same examined at once.

"You have got some good income property and I am glad to get something near home.

"Yours truly, J. V. W. Holmes."

On May 20, 1910, the trial judge filed his findings of fact and conclusions of law upon the hearing of the plea of privilege which are as follows:

"Plaintiff having requested the court to file its conclusions of law and facts had on the trial of defendants' plea of privilege to be sued in Nolan county, in compliance with said request the court makes the following findings of law and fact.

"I find that in 1910 the plaintiff was the owner of the land described in his petition, which was situated in Taylor county, Tex., and that the defendant J. V. W. Holmes owned 32 three-room rent houses situated in Ft. Worth, Tex., and also described in plaintiff's petition; that plaintiff was desirous of exchanging his land situated in Taylor county for property in Ft. Worth, and that by some means plaintiff and said defendant got in correspondence with each other.

"I find: That on November 1, 1910, the defendants Allen & Rockwell, who were the agents of the defendant Holmes, wrote a letter to plaintiff J. B. Coalson, addressed to him at his home in Parker county, Tex. That said letter was written from Sweetwater, Nolan county, Tex., where said defendants reside. That in said letter they represented that the defendant Holmes owned 32 three-room rent houses about two years old, nicely papered and painted, deep well and windmill, also an electric pump, so that water can be pumped when wind is insufficient to run mill, sewerage system, four lots; each 50 by 140 feet. In said letter the said parties represented to plaintiff that 12 of said houses were renting at $2 per week, and 12 at $1.50 per week, and 8 at $1 per week, making a total of $50 per week rent. This letter was received by plaintiff at his home in Parker coun-

ty, Tex. That these representations as to the prices for which said houses were renting were false and untrue. That some of said houses were vacant at the time, and the total sum which the houses that were renting were bringing per week did not exceed $30. That plaintiff relied on these representations as to the prices at which said property was renting, and was induced thereby to deed his land to defendant Holmes in exchange for said 32 houses and the lots on which they were situated.

"I find that before the trade was finally consummated the plaintiff did go to Ft. Worth and examine the houses; that he was a stranger there, and did not and could not learn the prices at which said houses were renting; that said houses were taken by plaintiff, in exchange for his land, at the price of $26,580, which was approximately the value of plaintiff's land; that said houses were in reality not worth more than $15,000 or $18,000.

"I find that all parties defendant reside in Nolan County, Tex."

Holmes prosecuted an appeal from the order of the court overruling his plea of privilege, but that appeal was dismissed by this court for lack of jurisdiction to determine it; appeals from orders on a plea of privilege being allowed by our statutes in the event only the plea is sustained. After the dismissal of such appeal, plaintiff, on March 31, 1913, filed an amended petition, containing substantially the same allegations as contained in the original petition. To that amended petition the defendants again pleaded their privilege to be sued in the county of Nolan, and without waiving said plea they also filed an answer, containing numerous demurrers and exceptions to the plaintiff's petition, and general and special denials of allegations contained therein. Upon the trial of the merits at which the judgment from which the present appeal has been prosecuted was rendered, the defendants claimed their right to submit to the jury their plea of privilege to be sued in Nolan county, and in support of the plea offered the same testimony as was offered when the original plea was heard before Judge Patterson. The plaintiff objected to such proof upon the ground that the point had been previously heard and determined adversely to the defendants, and the issue was now res adjudicata, and in support of that objection introduced the minutes of the court, showing Judge Patterson's previous order overruling the plea. That objection was sustained by the court, who declined to consider the plea of privilege or to hear testimony in support of the same. A bill of exception was taken to that ruling, and is shown in the record. But the record does not show any bill of exception taken to the previous order of the court overruling the plea of privilege. The action of the court in overruling the plea of privilege at the former hearing has been assigned as error, and error has also been assigned to the refusal of the court to hear evidence in support of the plea when last presented.

[1] The doctrine of res adjudicata is not strictly applicable to motions and interlocutory orders, but it seems to be pretty well settled that while the court has a discretionary power to allow a renewal of such motion, that discretion, in the absence of special circumstances constituting an equitable showing for another hearing, will not be exercised after the motion has been determined upon its merits. In the present case the second plea of privilege filed by the defendants presented no new matter nor special circumstance as a basis for an exercise of that discretionary power in the court to retry the plea of privilege. 1 Freeman on Judgments, §§ 325, 326; F. W. & D. C. Ry. Co. v. Harlan (Civ. App.) 62 S. W. 971; Clopton v. Clopton, 10 N. D. 569, 88 N. W. 562, 88 Am. St. Rep. 749.

[2] Appellee Coalson insists that appellant Holmes is in no position to complain of the action of the court in overruling the plea of privilege at the former term of court, since he reserved no bill of exception to that ruling. In support of that contention he cites rules 53, 54, and 55 (142 S. W. xxi), adopted by our Supreme Court to control the procedure in district and county courts; also the decisions of the Court of Civil Appeals in Levy v. Lupton, 156 S. W. 362; Ward v. Odem, 153 S. W. 634, to which might be added several other decisions of like effect, including Campbell v. Cates, 51 S. W. 268; American Warehouse Co. v. Ray, 150 S. W. 763. In each of the decisions noted it was held that a judgment overruling defendant's plea of privilege will not, upon appeal, be reviewed, in the absence of a bill of exceptions showing such ruling. Those decisions are based upon the conclusion that such a plea amounts only to a motion for a change of venue, and hence comes within the operation of rule 55. The rules referred to read as follows:

"53. There shall be no bills of exception taken to the judgments of the court, rendered upon those matters, which, at common law, constitute the record proper in the case, as the citation, petition, answer, and their supplements and amendments, and motions for a new trial, or in arrest of judgment, and final judgment.

"54. The charges of the court that are given, and those asked that are refused, when signed by the judge and filed by the clerk, being made thereby a part of the record by statute, should not, in civil causes, be made a part of a bill of exceptions.

"55. The rulings of the court upon applications for continuance and for change of venue, and other incidental motions, and upon the admission or rejection of evidence, and upon other proceedings in the case not embraced in the two preceding rules, when sought to be complained of as erroneous, must be presented in a bill of exceptions, signed by the judge and filed by the clerk, or otherwise made according to the statute, and they will thereby become a part of the record of the cause, and not otherwise." 142 S. W. xxi.

Article 2062, 2 Vernon's Sayles' Tex. Civ. Stat. reads:

"Where the ruling or other action of the court appears otherwise of record, no bill of exception shall be necessary to reserve an exception thereto."

As it is not within the power of the Supreme Court by rules to override a statute, it

is quite apparent that in adopting the rules mentioned, the article of the statute just quoted was construed as referring to "matters which at common law constitute the record proper in the case."

The question to be considered then is whether or not the plea in abatement and the order overruling the same constitute a part of the record proper at common law. In Words and Phrases Judicially Defined, vol. 7, pp. 6008, 6009, many definitions are contained of the term "record" at common law as applied to court proceedings, two of which are as follows:

"At common law a record signifies a roll of parchment on which the proceedings and transactions of the court are entered or drawn up by its officers, and which is then deposited in its treasury 'in perpetuam rei memoriam.' Hahn v. Kelly, 34 Cal. 391, 422 (94 Am. Dec. 742)—citing 3 Steph. Comm. 583; 3 Bl. Comm. 24. But in the United States paper has universally supplanted parchment as the material for the record. Nugent v. Powell, 4 Wyo. 173, 33 Pac. 23, 25, 20 L. R. A. 199, 62 Am. St. Rep. 17.

"The record of a suit embraces the successive judicial steps which have been taken and are necessary to show jurisdiction and regularity or procedure—the process, writ, or summons, with proof of service; the pleadings, minutes of trial, verdict and judgment; and also ancillary and interlocutory proceedings, entering into and supporting the action. Wilkinson v. Del. L. & W. Ry. Co. (C. C.) 23 Fed. 562, 564 (citing 2 Abbott's Law Dict. 388)."

The issue of venue necessarily must be presented in the pleadings. By article 1827, 2 Vernon's Sayles' Tex. Civ. Stat., it is provided that the residence of a defendant, if known, must be alleged in the petition. By article 1830 it is provided that "no person who is an inhabitant of this state shall be sued out of the county in which he has his domicile," except in certain cases enumerated in that article. It cannot be doubted that the pleadings constitute a part of the record proper at common law, and, such being true, it would follow logically that the action of the court in determining any controverted issue presented by the pleadings likewise would be a part of such record also. By article 1903 a plea of privilege to be sued in the county of one's residence is required to be in writing and duly verified.

[3] Furthermore, it is a familiar rule that the privilege to be sued in the county of one's residence may be invoked by a special exception addressed to the plaintiff's petition, where the facts alleged in the petition show that he has a right to claim such privilege. Masterson v. Cundiff, 58 Tex. 472; Thomson v. Locke, 66 Tex. 383, 1 S. W. 112; Wolf v. Sahm, 55 Tex. Civ. App. 564, 120 S. W. 1114, 121 S. W. 561; Sealey v. Whitfield (Civ. App.) 46 S. W. 865. And, unquestionably, a ruling by the court upon such an exception would constitute a part of the record proper at common law. In Crowell Ind. School District v. First Nat. Bank of Benjamin (Civ. App.) 163 S. W. 339, this court held that the ruling on a plea of privilege would constitute a part of the record proper at common law,

and could not be shown by bill of exception.

By articles 1832 and 1833, 2 Vernon's Sayles' Tex. Civ. Stat., which were enacted in the year 1907, it is provided that when a plea of privilege to be sued in the county of the residence of the defendant is sustained, the suit shall not be dismissed, but shall be transferred to the county of the residence of the defendant. In Hickman v. Swain (Tex.) 167 S. W. 209, our Supreme Court held that under those articles of the statutes, an appeal will lie from an order sustaining the plea of privilege, but not from an order overruling such a plea. It was further noted in the opinion in that case that prior to the enactment of those statutes, when a plea of privilege was sustained, the cause would be dismissed, and from such a judgment an appeal would lie.

[4-8] It is well settled that if an appeal does not lie from an interlocutory order, a party has a right to complain of such when an appeal is prosecuted from the final judgment. Brown v. Thomson (Civ. App.) 31 S. W. 1087. Furthermore, it is a familiar rule that a party has the right to a jury trial upon a plea of privilege (Hudgins & Bro. v. Low, 42 Tex. Civ. App. 556, 94 S. W. 411), and that such a plea may be heard and determined in connection with a trial of the case upon its merits. Caswell v. Hopson, (Civ. App.) 47 S. W. 54. An appeal from a judgment sustaining the plea of privilege, either under the old law or under the present statute, would be governed by the statutes and rules applicable to appeals generally, and we know of no decision or statute which, in that event, would require a bill of exception to the judgment from which the appeal is prosecuted as a prerequisite to the right to prosecute such an appeal. In such a case a statement of facts would be necessary as a basis for complaint that the order of the court was contrary to the verdict, just the same as in an appeal from any other judgment. It is well settled that a bill of exception cannot supply the office of a statement of facts, however full its recital of facts may be. Roundtree v. Galveston, 42 Tex. 612; Cates v. McClure, 27 Tex. Civ. App. 459, 66 S. W. 224. It is also well settled that the office of a bill of exception is to make that a part of record which otherwise would not be. Farrar v. Bates, 55 Tex. 193; Owens v. Mo. Pac. Ry. Co., 67 Tex. 679, 4 S. W. 593.

[9, 10] If no bill of exception to the judgment sustaining a plea of privilege is necessary in order to prosecute an appeal from that judgment, no reason is perceived why a different rule would apply if, on appeal from a final judgment on the merits, complaint is made of the action of the court in overruling such a plea. Under our decisions rules of practice are more liberally construed than statutes. Stephens v. Herron, 99 Tex. 63, 87 S. W. 326. Rules 53, 54, and 55 were adopted many years prior to the enactment of the present statutes passed in 1907, requiring a transfer of the case to the proper county in

the event a plea of privilege is sustained. We find those rules in volume 47 of the Texas Supreme Court Reports on pages 626, 627, in which volume it appears that the rules were then adopted on December 1, 1877. The same rules were in force to that date, but just how long prior we have not deemed it necessary to investigate. As noted already, under the law in force up to the year 1907 when a plea of privilege was sustained, it was the duty of the court to enter final judgment dismissing the cause. Hence it could not be said that under that régime a plea of privilege was in any sense an application for change of venue and within the language of rule 55. If such a plea under the former statutes could be termed an application at all, its effect would be an application to dismiss the cause and not for a change of venue. The fact that the rules quoted have not been changed since the enactment of articles 1832 and 1833 in the year 1907 would not necessarily warrant the conclusion that a different construction should be placed upon those rules. Chapter 9, 2 Vernon's Sayles' Tex. Civ. Stat. is a special chapter upon the title "Change of Venue," which has no reference whatever to a plea of privilege, but provides for a change of venue of a suit upon grounds therein stated, such as local prejudice against the complaining party, and other causes of a similar nature. So far as our investigation has extended, up to the year 1907 that chapter of the statute contained the only statutory provisions for a change of venue of suits in district and county courts, except the provision for transfer of probate proceedings from county to district court (Kahanek v. G., H. & S. A. Ry. Co., 72 Tex. 476, 10 S. W. 570) and the further exception of an old statute long since repealed, requiring a change of venue of a suit when the trial judge was disqualified to try it (Rogers v. Watrous, 8 Tex. 64, 58 Am. Dec. 100); and it has long been the rule that a court has no authority to change the venue except when expressly given by law (Dodson v. Bunton, 81 Tex. 655, 17 S. W. 507). According to our construction of rule 55, applications for a change of venue under the statutes then in force were the ones referred to in rule 55, and that in adopting that rule it was not intended that it should apply to a plea of privilege to be sued in the county of one's residence. Hilliard Bros. v. Wilson, reported in 76 Tex. 180, 13 S. W. 25, was a suit instituted by Hilliard Bros. in Burleson county against the sheriff of that county, residing therein, and L. & H. Blum, alleged to reside in Galveston county, to recover damages for wrongful seizure and conversion of a stock of goods by virtue of a writ of attachment. It was alleged in plaintiff's petition that the levy upon and sale of the goods occurred in Burleson county. Defendants Blum by a plea claimed the statutory privilege of being sued in the county of their residence, alleging in the plea that plaintiff's allegations of mis-

conduct and fraud on the part of the defendant Wilson in levying the writ and selling the goods, and of confederacy and combination between them and Wilson, were fraudulently made, solely for the purpose of giving the court of Burleson county jurisdiction. In the trial court the plea of privilege was sustained, and upon appeal Hilliard Bros., the plaintiffs, complained of the instruction given to the jury by the trial court that plaintiffs' cause of action against L. & H. Blum was dependent on their sustaining the charge of misconduct on the part of the defendant Wilson. In discussing that assignment the Supreme Court said:

"The charges complained of made the question of jurisdiction depend solely upon the truth or falsity of the allegations of misconduct and fraud on the part of defendant Wilson in executing the writ of attachment, without regard to whether or not those allegations were made in good faith.

"Appellants contend that the question of jurisdiction is determined by the averments of the petition, and that where the facts alleged give the court jurisdiction, it can be defeated only by a plea to the jurisdiction, and also pleading that the jurisdictional averments were fraudulently made, for the purpose of giving jurisdiction improperly, and a finding that the plea is true. The case of Dwyer v. Bassett, 63 Tex. 276, is relied on in support of the view contended for by appellants. We understand that case to decide that where jurisdiction is dependent upon the amount in controversy, the question is determined by the averments of the petition; for the amount alleged by the plaintiff to be due is the amount in controversy, and if the defendant believes that the averments of the petition as to amount were fraudulently made, then that must be specially pleaded, and the issue thus raised passed upon. The case of Dwyer v. Bassett goes no further than this, and does not decide the question here presented.

"The right to maintain a suit in a county other than that in which the statute fixes the venue must depend upon the existence of the fact or facts which constitute an exception to the statute, and not upon the mere averment of such fact or facts. Where jurisdiction of the person of a defendant is claimed under some exception to the general statute of venue, and he pleads the privilege of being sued in the county of his domicile as provided by that statute, to defeat this plea and deprive him of that right, we think the facts relied on should be not only alleged but proved."

[11] That decision applies with full force to the present suit. Coalson alleged the residence of Holmes to be in Nolan county, but sought to get jurisdiction of him upon the theory that he had committed a fraud upon Coalson in Parker county and hence the venue was properly in Parker county under exception 7, art. 1830, of the statutes. It cannot be said that Holmes in any manner waived his plea of privilege. He asserted it even upon the trial of the merits, and took a bill of exception to the action of the court in excluding evidence offered in support of it upon that trial. Under the decision last noted it was incumbent upon plaintiff to assume the burden of proof and overcome the plea by proof sustaining the allegation that the fraud alleged against Holmes was not only committed by him or his agents, but committed in Parker county.

[12] It will be noted that plaintiff's petition contains the specific allegation that he relied wholly upon the representations contained in the letter and those made by McClelland for information relative to whether or not said houses were occupied and the prices for which they were rented, and was induced by the representations contained in the letter to convey his ranch lands to Holmes. It will be noted, further, that the date of the letter was November 1, 1910, that the representations by McClelland were made November 15, 1910, in Tarrant county. Furthermore, as shown by his findings, the trial judge who heard and determined the plea found that plaintiff relied upon the representations contained in the letter from Allen & Rockwell, offering to guarantee that the property would rent for the prices therein named for the period of one year, and that plaintiff was induced thereby to deed his land to Holmes in exchange for said Ft. Worth property. The further conclusion by the judge that said guaranty amounted to a representation that the houses were then renting for those sums was not supported by the terms of the letter upon which it was based. The allegation contained in the petition that at the time the deeds of exchange were executed and delivered Holmes and Rockwell in Parker county reaffirmed the guaranty contained in the letter from Allen & Rockwell relative to the amount of rent did not amount to an allegation of fraudulent misrepresentation of fact.

[13] It will be observed that in another portion of the petition it was alleged that on May 12, 1911, the sewerage connection had been abandoned and the water system was then out of repair, and that plaintiff willfully concealed that condition at the time the exchange of properties was consummated, but these allegations were not the gravamen of plaintiff's case and were not sustained by the judge in his findings of fact upon the trial of the plea of privilege. Nor did the court sustain the further allegation contained in the petition that on November 16, 1910, Holmes represented to plaintiff, by a letter delivered to him in Parker county, that the property was good income property, and that plaintiff was thereby induced to believe that said property was then bringing an aggregate rental of $50 per week. In no event would the latter allegation constitute fraud sufficient of itself to support a recovery.

The letter from Allen & Rockwell did not purport to state what the Ft. Worth property was then being rented for. It contained the proposition to guarantee that it would rent for the prices therein named during the next succeeding year. The guaranty contained in the letter was contractual only, and a breach of that guaranty would not furnish a basis for the recovery of damages upon the theory of fraud and deceit. Bigham v. Bigham, 57 Tex. 238.

[14] Coalson insists, further, that appellant Holmes is in no position to complain of the action of the court in overruling the plea in abatement, since no specific assignment is presented to the findings of fact by the trial judge upon the plea. With this contention we cannot agree. It will be noted in the findings that Coalson was induced to make the trade by reason of the guaranty contained in the letter from Allen & Rockwell that the property would rent for an aggregate of $50 per week for the next succeeding year. As noted already, the further conclusion was that that guaranty amounted to a representation that the property was then being rented for those sums not warranted. In effect, it was a conclusion of law by the court upon the terms of the letter, construed as the court would construe any written contract. Plaintiff in his petition did not rely upon that interpretation, but alleged that the letter was intended to be so construed and was so understood by Coalson. A petition in a suit for damages for fraud and deceit, based solely upon such guaranty as a misrepresentation that the property was then being rented for the sum stated, would have been bad upon general demurrer even though the plaintiff had further alleged that such guaranty amounted to such a statement; and the conclusion of the trial judge in his findings could not be given different effect. Hence the action of the court in sustaining the plea of privilege solely upon the guaranty contained in the letter was fundamental error, and in order for Holmes to complain of it he is not required to specifically assign error to such conclusion by the court. It will be noted that the trial judge failed to sustain the allegations in the petition that the letter was intended to be understood by Coalson as such a representation, and that it was so understood by him, and failed to sustain any other allegation intended for the purpose of showing jurisdiction in Parker county, except that of guaranty; and neither in the court below nor here has any complaint been made by Coalson of the court's failure to find upon any of those issues. In other words, Coalson is in the position of being satisfied with the findings made.

In the foregoing discussion we do not wish to be understood as holding that, if Allen & Rockwell by their letter intended to lead Coalson to believe that the property was then renting for the price offered to be guaranteed, and Coalson so understood the letter and was induced so to believe, those facts, taken in connection with that portion of the letter containing the offer of guaranty, and all the attendant circumstances, would constitute a basis for a recovery by Coalson of the damages sought. Upon that question we express no opinion, since in the foregoing discussion we have proceeded upon the theory, presented by the plaintiff's petition, that the same would constitute such cause of action.

For the reasons indicated appellant's as-

signment of error, addressed to the order of the court overruling defendant's plea of privilege to be sued in Nolan county, is sustained, the order overruling the plea of privilege and the final judgment in plaintiff's favor against appellant Holmes are reversed, the plea of privilege is sustained, and the suit as between Coalson and Holmes is remanded to the trial court, with instructions to transfer the same to the district court of Nolan county in compliance with the requirements of articles 1832 and 1833 of our present statutes. The judgment in favor of Allen & Rockwell, of which no complaint is made upon this appeal, will not be disturbed.

### On Motion for Rehearing.

[15] Appellee insists that we erred in considering the statement of facts embodied in the transcript and showing all the evidence introduced upon the trial of appellant's plea of privilege to be sued in the county of his residence. In his brief submitted on the original hearing, by way of counter propositions to some of appellant's assignments of error, the contention is made that there is "no official statement of facts" showing the evidence heard upon the plea of privilege; while in his reply to other assignments appellee refers to the statement of facts heard upon that plea and shown in the transcript, in support of his contention that the same ,was properly overruled. But appellee made no motion at any time to strike out such statement of facts, and made no objection in his brief to a consideration of the same, other than as stated above, notwithstanding the transcript was filed in this court on August 17, 1914, and the cause was not submitted in this court until May 1, 1915.

In Royal Insurance Co. v. T. & G. Ry. Co., 102 Tex. 306, 116 S. W. 46, our Supreme Court said:

"It appears that the original statement filed in the trial court did not accompany, but was copied into, the record on appeal. No objection was urged to this by appellee, and the cause was submitted to the court for decision upon the record as presented. The law, it is true, required that the original, and not a copy, be sent up; but the difference between the two is so trivial, in comparison with the effect upon the right of appeal of a disregard of the statement, that it should be held that, if an appellee desires to insist upon the original, he should, in some way, make his insistence known before submission, so that the other party may perfect the record by carrying it up, and that when he fails to so do, and allows the cause to be submitted upon the copy, he should be held to have waived the objection, and the copy should be considered as containing the facts upon which the cause is to be decided."

See, also, rule 8, 142 S. W. xi, which requires all motions relating to informalities in bringing a case into the Court of Civil Appeals to be filed within 30 days after filing the transcript. Under that decision and rule and the facts stated above, the contention now under discussion is overruled.

[16] The transcript contains the assignments of error which appellant filed on the first appeal from the order overruling his plea of privilege, one of which (fifth) reads:

"The plaintiff's petition being admitted as true in its averments in the submission of and for the purposes of the pleas of privilege, and same being the only evidence as to the rental value of the Ft. Worth property, the court erred in its findings of fact that said property was renting for not exceeding $30 per week."

And in the statement appearing in appellant's brief under his second, third, and fourth assignments of error, all of which complained of the order overruling the plea of privilege, occurs the following:

"For the purpose of the submission of the plea it was admitted that the allegations of the petition were true, as on general demurrer, and the plaintiff introduced the alleged Allen & Rockwell letter of date November 1, 1910 (Tr. pp. 17 and 18)."

Appellee now insists with great earnestness that the assignment and statement copied above should be construed as admissions by appellant that the allegations of venue contained in plaintiff's petition are true. That he did not make such admissions upon the hearing of the plea of privilege is shown by the statement of facts, which statement was agreed to and signed by counsel for both parties as—

"a true and correct statement of the facts and all the facts adduced in evidence in the matter of the pleas of privilege filed by the defendants in said cause."

The assignment copied above is not embraced in appellant's brief on this appeal, but if it could be invoked by appellee for the purpose of estoppel, neither the statements therein contained, nor the statement copied from appellant's brief, could reasonably be construed as an admission in direct opposition to and destructive of the force of several assignments of error addressed to the order overruling the plea of privilege. While the language employed by appellant's counsel in both of those instances was perhaps inapt, it is quite clear that it was used in the sense of a demurrer in the nature of a plea of privilege to the sufficiency of the allegations contained in the petition to show a right in plaintiff to sue the defendants in Parker county, when it was further alleged in the petition that they resided in Nolan county.

[17] Appellee insists, further, that in view of the fact that the letter from Allen & Rockwell was in reply to a letter of inquiry from Coalson relative to what the Ft. Worth property was renting for, this court should presume that the trial judge found that Allen & Rockwell, by their letter, intended to lead Coalson to believe that the property was then renting for the prices which they said Holmes was willing to guarantee Coalson would realize as rentals from the property for 12 months. Appellee insists that if such was the intention of Allen & Rockwell in writing that letter, which was addressed to and received by Coalson in Parker county, then the allegation of fraud committed in Parker county was sustained, and the plea of privilege

properly overruled. In the case of T. & P. Ry. Co. v. Purcell, 91 Tex. 585, 44 S. W. 1058, cited by appellee, it was held that in the absence of a statement of facts, it must be presumed that every issue of fact made by the pleadings and not determined in the court's findings filed has been found in a manner to support the judgment, and that in the absence of a statement of facts, exceptions to findings of fact upon issues presented by the pleadings cannot be considered.

But it is also well settled that if there is a statement of facts in the record, a party may, upon appeal, assail, as unsupported by the evidence, any finding of fact by the trial judge, either expressly stated, or which the opposing party contends should be presumed, and that in the absence of evidence to support any such express finding, the same will be given no effect, and that no finding will be presumed for which there is no support in the evidence. In our original opinion we set out substantially all the evidence and admissions adduced upon the hearing of the plea of privilege. It will be noted that Coalson did not testify at all upon that trial, and no evidence was introduced to sustain his allegation that by the letter of Allen & Rockwell he was induced to believe that the Ft. Worth property was then being rented for the prices which according to the letter Holmes was willing to guarantee would be realized thereon for 12 months. The court made no such finding, and none can be presumed because of a lack of any evidence to support it. As noted before, there was no finding filed relative to the alleged fraudulent intent of Allen & Rockwell in writing the letter. We seriously doubt whether such a finding would have been warranted, even if that letter be read in the light of Coalson's letter of inquiry to which it was a reply, since it clearly avoided a direct answer to the inquiry, and merely offered to guarantee rents for 12 months. It contained no representation of fact, nor even an expression of opinion on the subject covered by the inquiry, and, aside from the contents of the two letters, there was no evidence of any intention on the part of Allen & Rockwell to induce Coalson to believe that the property was then rented for the prices proposed to be guaranteed. 20 Cyc. 14. But even if it should be presumed that the court found, and was warranted in finding, the alleged fraudulent intent on the part of Allen & Rockwell in writing the letter, still there was no proof nor finding of actionable fraud committed at all, since there was no evidence that the fraud intended ever accomplished the desired effect. In other words, there was no proof, upon the hearing of the plea of privilege, that Coalson was ever deceived by the letter into believing that the property was renting for the prices mentioned in the letter, and that by reason of such belief, he was induced to make the trade with Holmes.

20 Cyc. 12, 13. Nor does the statement of facts show any proof that the property was not renting for the prices mentioned in said letter.

No reason is perceived why appellant should be deprived of his valuable statutory right to be sued in the county of his residence, when he is properly asserting that privilege, upon a mere allegation without proof, while upon trial of the merits of his suit the burden is upon plaintiff to sustain by proof all material allegations in his petition.

There is a material distinction between statutes fixing the jurisdiction of courts and those upon the subject of venue. The latter statutes are for the benefit of defendants alone, who can waive the rights therein given, while the question of jurisdiction goes to the authority of the court to determine the controversy.

[18] Appellee complains that at all events the case should have been remanded for another trial upon the plea of privilege, and that we erred in rendering judgment sustaining that plea and directing a transfer of the case to Nolan county. As noted already, we have held that the evidence submitted upon the issues raised by the plea of privilege was insufficient, as a question of law, to support the order overruling the plea. In other words, if the trial of the plea had been before a jury, it would have been the duty of the court to instruct a verdict sustaining the plea. Having reversed the judgment upon that issue, we proceeded to render judgment here sustaining the plea, in conformity with the provisions of article 1626, Vernon's Sayles' Texas Civil Statutes, and the many decisions based upon that statute cited in notes thereunder, including Henne & Meyer v. Moultrie, 97 Tex. 216, 77 S. W. 607; Eastham v. Hunter, 98 Tex. 560, 86 S. W. 323. We still adhere to those conclusions.

In one paragraph of the opinion we referred to the plea of privilege as a plea in abatement. That designation was incorrect, in view of the present statute requiring the suit to be transferred to the proper county in the event the plea of privilege is sustained. But the error in so designating the plea was in no manner material to the views expressed in disposing of the assignments relating thereto.

The motion for rehearing is overruled.