SAMUEL K. PUA *v.* HILO TRIBUNE-HERALD, LIMITED.

No. 1890.

SUBMITTED JUNE 24, 1929.        DECIDED JULY 1, 1929.

PERRY, C. J., BANKS, J., AND CIRCUIT JUDGE DAVIS IN PLACE OF PARSONS, J., ABSENT.

OPINION OF THE COURT BY PERRY, C. J.

This is an action at law for damages for the publication in a newspaper of an alleged libelous article. It was instituted in the circuit court of the fourth judicial cir-

cuit on October 12, 1926. An answer was filed on December 16, of the same year. On March 30, 1928, the cause was discontinued for the reason, as now stated by the plaintiff, that he had instructed his attorneys to demand a jury trial and that such a demand had not been filed. The cause was recommenced in the circuit court of the third judicial circuit on May 12, 1928. Trial before a jury was had on December 17, 1928. The jury was unable to agree and was discharged; and the cause was continued for further trial. On May 11, 1929, the defendant filed a motion for a change of venue. This was granted and an order was signed on May 17, 1929, that the venue be changed to the circuit court of the fourth circuit and that the record be forwarded to that court. On the same day (May 17, 1929), but at an earlier hour, an order had been signed. by the judge of the circuit court of the third circuit providing that "an interlocutory bill of exceptions on the order for change of venue herein is hereby allowed." The bill of exceptions itself was presented May 27, 1929, and allowed the following day. The only exception incorporated in the bill is to the decision and order granting a change of venue.

It is contended by the appellee that the trial judge was without jurisdiction to allow the bill of exceptions because prior to the allowance an order had been signed granting a change of venue and transferring the record to the circuit court of the fourth circuit and in support of the contention cases have been cited holding that upon the signing of an order for change of venue, the court making the order immediately loses jurisdiction and thereupon the sole jurisdiction becomes vested in the court to which the record is transferred. An examination of these cases shows that in none of them was the right of appeal or the power to allow an appeal involved. They were cases merely of contests as to which of the two courts had jurisdic-

tion to take further proceedings. Our statute, R. L. 1925, section 2515, provides that "bills of exceptions upon like terms as to filing bond and payment of costs, may be certified to the supreme court from decisions overruling demurrers or from other interlocutory orders, decisions or judgments, whenever the judge in his discretion may think the same advisable for a more speedy termination of the case." This language is clear and unambiguous. Obviously bills of exceptions in such cases are to be certified, not by the judge of the court to which the record is being transferred, but by the judge who makes the order of transfer and who alone knows whether a proposed bill of exceptions correctly states the facts. Moreover, the language of the statute clearly presupposes that an interlocutory order or decision *has been made* before it can be appealed from or excepted to. The statement is that "bills of exceptions * * * may be certified * * * from other interlocutory orders, decisions or judgments." The existence of an interlocutory order is an essential prerequisite to the consideration and allowance of a bill of exceptions. To hold that a bill of exceptions cannot be allowed simply because the interlocutory order sought to be reviewed has been already made would be to nullify the statute. See *Cantwell* v. *Columbia Lead Co.,* 97 S. W. (Mo.) 167, 178.

It is further contended by the appellee that the bill of exceptions should be dismissed for the additional reason that its allowance was improvident and without just cause. The statement in the statute is that bills of exceptions from interlocutory orders may be allowed "whenever the judge in his discretion may think the same advisable for a more speedy termination of the case." The contention advanced is that the allowance of the present bill of exceptions can only result in delay and cannot possibly aid in the "more speedy termination of the case." If it

could have been said in advance that the exceptions allow-
ed would with certainty be overruled in the appellate
court, the contention would be good; but there was no
such certainty. It was conceivable that the exceptions
would be sustained. If sustainable, it would certainly be
in the best interests of the parties and in aid of a more
speedy termination of the case to have the order reviewed
and set aside before a new trial should be had in the court
to which the record had been ordered transferred. Inso-
far as this particular point is concerned, it cannot be said
that the trial judge abused his discretion in allowing a
bill of exceptions.

Seventeen affidavits were filed in which the affiants
stated their belief that the defendant could not obtain a
fair and impartial trial in the third circuit. Fifty-three
affidavits were presented in which the affiants stated their
belief that each of the parties could have a fair and im-
partial trial in the third circuit. These affidavits having
been all presented and argued upon by counsel, the trial
judge, evidently entertaining some doubt, postponed to
the next day a decision on the motion for a change of
venue. On the following day, in a rather lengthy oral
opinion, the judge commented upon the contents of the
affidavits and then said: "I will tell you what I found
yesterday when I adjourned court. I wanted to make a
little investigation for myself on my own behalf. I went
to one of the jurors who sat at the hearing on this same
case last December. I do not care to call any names.
This kind of information had come to my ears: that a
canvass had been made of the jurors last December to
ascertain how they felt about it on the question of the
damages claimed by the plaintiff against the defendant.
And what do you suppose that juror told me? I did not
go to but one, that was enough. I asked him a simple
question and I told him of the rumors I had heard and it

was a mere rumor. What do you suppose he said? I asked him if he had been approached by anybody when the case was called before. 'Not exactly,' he said, 'but,' he said, 'a policeman came to me and asked me how I felt about it.' The juror said he did not know anything about it. The policeman remarked that he thought Sam Pua should have some damages."

In other words, after receiving the evidence offered in court the judge, without notice to the parties, examined an additional witness with reference to material matters involved in the controversy. This, we think, was not correct procedure. Courts do, of course, take judicial notice of certain matters without the presentation of proof, but that can be only with reference to that which is generally known in the community. Knowledge possessed by the judge alone cannot be permitted to influence him in his judicial decisions.

"As a matter of course, a judge cannot make his individual knowledge of facts without his judicial knowledge the basis of his decision or judgment. 'Judicial knowledge, however, is limited to what a judge may properly know in his judicial capacity and he is not authorized to make his individual knowledge of a fact not generally or professionally known the basis of his action.' 23 C. J. 61. 'Of private and special facts, in trials in equity and at law, the court or jury, as the case may be, is bound carefully to exclude the influence of all previous knowledge.' *Brown* v. *Piper,* 91 U. S. 37, 42. * * * 'The personal knowledge of the chancellor is not judicial knowledge of the court, for there is no way of testing the accuracy of knowledge which rests entirely within the breast of the court.' *Weatherton* v. *Taylor,* 124 Ark. 579, 187 S. W. 450." *Leong Kim Wai* v. *Burnett,* 23 F. (2d) 789, 791. "Manifestly there is no hearing when the party does not know what evidence is offered or considered and is not

given an opportunity to test, explain or refute. \* \* \*
The more liberal the practice in admitting testimony the
more imperative the obligation to preserve the essential
rules of evidence by which rights are asserted or defended.
In such cases the commissioners cannot act upon their
own information as could jurors in primitive days. All
parties must be fully apprised of the evidence submitted
or to be considered, and must be given opportunity to
cross-examine witnesses, to inspect documents and to offer
evidence in explanation or rebuttal. In no other way can
a party maintain its rights or make its defense. In no
other way can it test the sufficiency of the facts to sup-
port the finding." *Interstate Commerce Commission* v.
*R. R.,* 227 U. S. 88, 93. "Courts will take notice of what-
ever is generally known within the limits of their juris-
diction; and, if the judge's memory is at fault, he may re-
fresh it by resorting to any means for that purpose which
he may deem safe and proper." *Brown* v. *Piper,* 91 U. S.
37, 42. Undisputed facts within the general knowledge
of all can be presumed to be known by judges and can be
considered in the disposition of cases without proof there-
of, but the matters concerning which the private inves-
tigation was made in this case were not of that nature.
Efforts at tampering with prospective jurors are usually
secret and not within the general knowledge of the com-
munity. The witness whom the judge consulted was not
subjected to cross-examination and the parties were not
permitted to controvert his statements with other evi-
dence. It is clear from the detailed oral opinion rendered
by the judge that in coming to the conclusion that a
change of venue should be ordered he was moved mainly,
and perhaps wholly, by what he discovered in his private
investigation. He had said that the fifty-three affiants
on the one side and the seventeen on the other were all
"responsible men, there is no question about that, \* \* \*

reputable men whose characters are beyond all question." He evidently found difficulty in deciding between the two sets of affidavits without other evidence; and for that reason examined the additional witness out of court.

It cannot be said that without the evidence of the witness privately examined the judge would certainly have concluded to order the venue changed. Under these circumstances the exception is sustained, the order excepted to is set aside and the cause is remanded to the circuit court of the third judicial circuit for further proceedings not inconsistent with this opinion.

*A. Withington* and *J. W. Russell* (*J. W. Russell, D. E. Metzger* and *Robertson & Castle* on the brief) for plaintiff.

*C. S. Carlsmith* (*C. W. Carlsmith* with him on the brief) for defendant.